WHITEFORD, TAYLOR & PRESTON L.L.P.
444 Madison Avenue, Fourth Floor
New York, NY 10022
(914) 761-8400
klewis@wtplaw.com
vinge@wtplaw.com
Kenneth M. Lewis
Vernon E. Inge, Jr.

*Attorneys for Plaintiff, Dale Merrill, Administrator of
The Mashantucket Pequot Tribal National Health Plan*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DALE MERRILL, ADMINISTRATOR OF
THE MASHANTUCKET PEQUOT TRIBAL
NATION HEALTH PLAN,

                    Plaintiff,

          - against -

JING DENG, M.D. and JING DENG MD
REHABILITATION P.C.,

                  Defendants.

Case No. 1:20-cv-10689

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff, Dale Merrill, as Administrator of the Mashantucket Pequot Tribal Nation Health Plan (the "Plan Administrator" or "Plaintiff") by her attorneys, Whiteford, Taylor & Preston L.L.P., as and for her Complaint against Jing Deng, M.D. ("Deng") and Jing Deng MD Rehabilitation P.C. ("Deng Rehabilitation," and collectively with Deng, the "Defendants"), alleges as follows:

## NATURE OF THE ACTION

1.    This is an action by the Plaintiff in her capacity as a plan fiduciary of the Mashantucket Pequot Tribal Nation Health Plan (the "Plan"), a tribally sponsored employee

benefit plan, to enforce her rights under the Plan and recover overpayments made to Defendants, medical services providers, pursuant to Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3) ("ERISA").[1]

2.      29 U.S.C. § 1132(a)(3) empowers a plan fiduciary to bring a civil action to enjoin any act or practice which violates any provision of that subchapter or the terms of the Plan or to obtain other appropriate relief: (i) to redress such violations; or (ii) to enforce any provision of such subchapter or the terms of the Plan.

3.      During the period 2016 through 2018, Defendants performed hundreds of services to Plan participants. Following an investigation, the Plan discovered that Defendants were paid $247,284.55 in excess reimbursements, or overpayments, for services rendered during that time period. Despite due demand, Defendants have failed or refused to return those overpayments.

## JURISDICTION AND VENUE

4.      Pursuant to 28 U.S.C. § 1331, this Court has jurisdiction over this matter because it is a civil action arising under the laws of the United States, specifically 29 U.S.C. § 1132(e)(1), which provides for federal question jurisdiction over actions governed by ERISA.

5.      Pursuant to 28 U.S.C. § 1332, this Court also has diversity jurisdiction over this action because Plaintiff and Defendants are citizens and residents of different states and the amount in controversy exceeds the jurisdictional prerequisite.

6.      Defendants' principal place of business is in this judicial district; they administered occupational medicine and rehabilitative services to Plan participants in this district; and, as a

---

[1] The Mashantucket Pequot Tribe's Mashantucket Pequot Tribal Laws ("M.P.T.L.") expressly adopted ERISA to govern tribally sponsored employee benefit plans. See 15 M.P.T.L. § 1 (Adopting ERISA, 29 U.S.C. §§ 1001–1461, in full).

result, the events giving rise to the asserted claims occurred in this judicial district. 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391.

7.      This Court has personal jurisdiction over the Defendants because they maintain their principal place of business in this judicial district. Venue is therefore proper in this district.

## THE PARTIES

8.      The Plan Administrator is the Senior Vice President of Human Resources and Administration at Foxwoods Resort Casino, and is a Named Fiduciary of the Plan. The Plan Administrator is located at Foxwoods Resort Casino, 350 Trolley Line Boulevard, Mashantucket, Connecticut 06338.

9.      The Plan is an employee benefit plan within the meaning of 29 U.S.C. §§ 1002 and 1132(d). The Plan provides benefits to employees of the Mashantucket Pequot Tribal Nation, including the Foxwoods Resort Casino. The Plan is administered out of the state of Connecticut and is governed by ERISA.

10.     Upon information and belief, Deng has a principal place of business at 800 Second Avenue, Suite 610, New York, New York 10017. Upon information and believe, Deng also maintains an office at 4233 Kissena Boulevard, Suite 1A, Flushing, New York 11355.

11.     Upon information and belief, Deng Rehabilitation is a medical practice, owned and operated by Deng, with its principal place of business at 800 Second Avenue, Suite 610, New York, New York 10017.

12.     At all times relevant to this lawsuit, Defendants administered occupational medicine and rehabilitative services to Plan participants.

## BACKGROUND FACTS

13.     At all times relevant to this lawsuit, the Plan administered a self-funded health and

welfare benefit plan for employees of the Mashantucket Pequot Tribal Nation, including the Foxwoods Resort Casino.

14.     The Plan is governed by the provisions of ERISA.

15.     Pursuant to the terms of the Plan, Plan participants may assign their rights to reimbursements to providers of health services.

16.     When a Plan participant assigns their rights to a healthcare provider, that healthcare provider succeeds to the rights and obligations of the employee and is subject to the terms and conditions of the Plan. Therefore, by accepting such an assignment, an assignee healthcare provider accepts all of the terms of the Plan, including all of its reimbursement restrictions and guidelines.  Specifically, the Plan provides:

> Assignment of Benefits (applicable to the medical plan)
>
> An arrangement whereby the participant, at the discretion of the plan administrator, assigns their right to seek and receive payment of eligible plan benefits, less deductibles, copayments and the coinsurance percentage that is not paid by the plan, in strict accordance with the terms of this Plan Document, to a provider. If a provider accepts said arrangement, providers' rights to receive plan benefits are equal to those of a participant and are limited by the terms of this Plan Document. A provider that accepts this arrangement indicates acceptance of an "assignment of benefits" and deductibles, copayments and the coinsurance percentage that is the responsibility of the participant, as consideration in full for services, supplies, and/or treatment rendered. The plan administrator may revoke or disregard an assignment of benefits previously issued to a provider at its discretion and continue to treat the participant as the sole beneficiary.  Plan, p. 5.

17.     In addition, the Plan Administrator has full discretion to interpret and administer the Plan and enforce its terms.  As set forth in the Plan:

> The Plan Administrator has the authority to control and manage the operation and administration of each plan. The Plan Administrator has the sole discretion to interpret and administer the provisions of

4

the plan and make factual determinations related thereto.  Plan, p. 203.

18.     Any *excess* monies paid by the Plan in satisfaction of a provider's claim must be repaid by that provider:

> A participant, dependent, provider, another benefit plan, insurer, or any other person or entity who receives a payment exceeding the amount of benefits payable under the terms of the plan or on whose behalf such payment was made, shall return or refund the amount of such erroneous payment to the plan within 30 days of discovery or demand. The plan administrator shall have no obligation to secure payment for the expense for which the erroneous payment was made or to which it was applied.  Plan, p. 217.

19.     Providers accepting payments (*e.g.*, reimbursements for services performed) from the Plan, or to whom a right to benefits has been assigned, agree to be bound by the express terms of the Plan and, in submitting claims to the Plan under an assignment of benefits, a healthcare provider must submit those claims in strict accordance with standardized practices. The Plan provides:

> Providers and any other person or entity accepting payment from the plan or to whom a right to benefits has been assigned, in consideration of services rendered, payments and/or rights, agrees to be bound by the terms of this plan and agree to submit claims for reimbursement in strict accordance with applicable health care practice acts, ICD or CPT standards, Medicare guidelines, HCPCS standards, or other standards approved by the plan administrator or insurer.  Plan, pp. 217-18.

20.     If a provider submits claims for reimbursement that deviate from the express restrictions and guidelines set forth in the Plan, that provider is required to repay any monies mistakenly paid by the Plan in satisfaction of those improper claims.

21.     In addition, a provider of medical services is prohibited from applying any overpayments to other expenses, and the method(s) of repayment is in the sole discretion of the Plan Administrator.  Plan, p. 217.

22.     If such amounts are not repaid, the Plan is entitled to interest of one and one-half percent (1.5%) per month.  Moreover, if the Plan is required to bring an action against a provider, it is entitled to attorneys' fees and costs.

> Any payments made on claims for reimbursement not in accordance with the above provisions shall be repaid to the plan within 30 days of discovery or demand or incur prejudgment interest of 1.5% per month. If the plan must bring an action against a participant, provider or other person or entity to enforce the provisions of this section, then that participant, provider or other person or entity agrees to pay the plan's attorneys' fees and costs, regardless of the action's outcome.  Plan, p. 218.

23.     Defendants performed hundreds of procedures for Plan participants between 2016 and 2018.

24.     As assignees of benefits under the Plan, Defendants had an obligation and duty to submit claims in accordance with the terms and conditions set forth in the Plan.

25.     Following an investigation, which was completed on June 5, 2020, the Plan discovered that Defendants submitted claims and accepted payments from the Plan totaling at least $247,284.55 more than they were entitled to for the services they performed.

26.     Specifically, the investigation identified 173 improper charges, 165 of which violated National Correct Coding Initiatives ("NCCI") coding policies, entered by Defendants when submitting claims for reimbursement from the Plan. Other improper charges involved excessive frequency of certain procedures and excessive repetition of certain other procedures.

27.     On July 16, 2020, Plaintiff, through counsel, contacted Defendants in writing and demanded that they return the $247,284.55 in overpayments.  However, Defendants have refused to do so, or to provide any reason for their failure to do so.  In fact, Defendants provided no response at all.

28.     Pursuant to the terms and conditions of the Plan, Plaintiff has the right to recover

overpayments from assignee providers. Accordingly, Plaintiff is entitled to recover the overpayments made to the Defendants.

**FIRST CLAIM FOR RELIEF**
**(ENFORCEMENT OF RIGHTS AND REMEDIES UNDER THE PLAN)**

29.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

30.     Plaintiff, for and on behalf of the Plan, has a right to repayment or recoupment of all Plan benefits that Defendants received, but to which they were not entitled (*e.g.*, excess reimbursements).

31.     Defendants have received payments from the Plan in excess of those to which they were entitled to under the Plan.

32.     By failing to repay or return the Plan for the overpayments, Defendants are in violation of the Plan, and Plaintiff is entitled to enforce the Plan and seek repayment or recoupment of the full amount of the overpayments pursuant to 29 U.S.C. § 1132(a)(3).

33.     The Plan has paid to Defendants, as assignees, benefits in excess of what is due under the Plan, in an amount of not less than $247,284.55, and Plaintiff is entitled to seek repayment or recoupment for all such amounts.

34.     Plaintiff is also entitled to recover interest on such overpayments at the rate of 1.5% per month, in accordance with the Plan.

**SECOND CLAIM FOR RELIEF**
**(ATTORNEYS' FEES AND COSTS)**

35.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

36.     Plaintiff has incurred and continues to incur costs and attorneys' fees in connection

with her efforts, including through this action, to enforce her rights and remedies under the Plan.

37.     Accordingly, Plaintiff is entitled to judgment against Defendants in the amount of Plaintiff's attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
**(UNJUST ENRICHMENT)**

38.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

39.     Defendants have been unjustly enriched when they retained and failed or refused to return to or repay the Plan for the overpayments they received from it.

40.     Defendants retained a benefit at the expense of the Plan, and permitting Defendants to retain that benefit would be contrary to equity and good conscience.

**FOURTH CLAIM FOR RELIEF**
**(EQUITABLE LIEN OR CONSTRUCTIVE TRUST)**

41.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

42.     Under New York law, a party is entitled to an equitable lien where an implied agreement establishes that there should be a lien on particular property.

43.     Defendants had a duty to retain the funds relating to the overpayments, to not apply those funds to any other expenses, and to repay or return those funds to the Plan at the sole discretion of the Plan Administrator.

44.     Upon information and belief, Defendants possess the funds relating to the overpayments.

45.     In addition, Defendants were unjustly enriched because they retained a benefit to which they were not entitled at the expense of the Plan, and failed or refused to return to or repay

the Plan for the overpayments they received from it.

46.     Plaintiff is therefore entitled to an equitable lien or constructive trust with respect to such funds.

**FIFTH CLAIM FOR RELIEF**
**(CONVERSION)**

47.     Plaintiff realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

48.     Conversion is the unauthorized assumption and exercise of the right of ownership of goods belonging to another to the exclusion of the owner's rights.  A conversion takes place when someone intentionally interferes or exercises control over property of another, interfering with that person's right or interest in the property.

49.     Defendants knowingly and intentionally submitted 173 improper charges, 165 of which stemmed from Defendants' repeated submission of incorrect codes in violation of NCCI policies and Defendants' performance of certain procedures with excessive frequency and/or repetition.

50.     Defendants intentionally and without authority sought, and obtained, funds from the Plan, for reimbursements in excess of those permitted by the Plan.

51.     Additionally, Defendants intentionally and without authority failed to return to the Plan the Plan's property arising from such overcharges, thereby interfering with the Plan's rights to such funds.

52.     In New York, a claimant is entitled to an award of punitive damages arising out of an intentional tort, such as conversion.

53.     Accordingly, Plaintiff is entitled to damages for Defendants' conversion of the Plan's assets, as well as punitive damages in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## (INJUNCTIVE RELIEF)

54.    Plaintiff realleges and incorporates by reference the foregoing paragraphs as if set forth fully herein.

55.    Unless Defendants are restrained and enjoined from distributing, alienating, transferring, assigning, encumbering or otherwise disposing of their assets, Defendants may have no assets with which to meet their obligation to the Plan, thereby causing the Plan and its participants and beneficiaries immediate and irreparable loss, damage, and injury for which the Plan will have no adequate remedy of law.

56.    The Plan may be subjected to irreparable hardship and injury in the event that Defendants are not immediately restrained and enjoined and the status quo maintained during the pendency of this action.

## JURY DEMAND

57.    Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff respectfully requests that all issues and claims be tried before a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Dale Merrill, as Administrator of the Mashantucket Pequot Tribal National Health Plan, for and on behalf of the Plan, respectfully requests that judgment be entered against Defendants, Jing Deng, M.D. and Jing Deng MD Rehabilitation P.C., as follows:

A.    On the First Claim for Relief, awarding Plaintiff judgment against the Defendants in the amount of not less than $247,284.55, together with pre-judgment interest at the rate of one and one-half percent (1.5%) per month, attorneys' fees, and costs;

B.    On the Second Claim for Relief, awarding Plaintiff judgment for her reasonable attorneys' fees and costs incurred by the Plan in connection with the exercise of its rights and

remedies under the Plan;

        C.       On the Third Claim for Relief, awarding Plaintiff judgment against the Defendants in the amount of not less than $247,284.55, together with pre-judgment interest at the rate of one and one-half percent (1.5%) per month, attorneys' fees, and costs;

        D.       On the Fourth Claim For Relief, granting Plaintiff an equitable lien or constructive trust in the amount of not less than $247,284.55, together with pre-judgment interest at the rate of one and one-half percent (1.5%) per month, attorneys' fees, and costs;

        E.       On the Fifth Claim for Relief, awarding Plaintiff judgment against the Defendants in the amount of not less than $247,284.55, as well as punitive damages in an amount to be determined at trial, together with pre-judgment interest at the rate of one and one-half percent (1.5%) per month, attorneys' fees, and costs;

        F.       On the Sixth Claim for Relief, awarding Plaintiff judgment restraining and enjoining the Defendants from distributing, alienating, transferring, assigning, encumbering or otherwise disposing of their assets; and

        G.       For such other and further relief as the Court deems just and proper.

Dated: New York, New York
       December 18, 2020               WHITEFORD, TAYLOR & PRESTON L.L.P

                               By:     */s/ Kenneth M. Lewis*
                                    Kenneth M. Lewis
                                    Vernon E. Inge, Jr.

                               444 Madison Avenue, Fourth Floor
                               New York, NY 10022
                               (914) 761-8400
                               klewis@wtplaw.com
                               vinge@wtplaw.com

                               *Counsel for Plaintiff, Dale Merrill, Administrator of the Mashantucket Pequot Tribal National Health Plan*